**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GLORIA J. HURT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 22-cv-5552** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **COOK COUNTY SHERIFF'S OFFICE,** | ) | |
| **COUNTY OF COOK, ILLINOIS, and** | ) | |
| **SUPERINTENDENT MARTHA** | ) | |
| **YOKSOULIAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Gloria J. Hurt, has filed a second amended complaint ("SAC") against

defendants Cook County Sheriff's Office ("CCSO"), County of Cook, Illinois ("Cook County"),

and Superintendent Martha Yoksoulian ("Yoksoulian"), alleging violations of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*, Age Discrimination in Employment

Act ("ADEA"), 29 U.S.C. §621, *et seq.*, Family and Medical Leave Act ("FMLA"), 29 U.S.C

2601, *et seq.*, 42 U.S.C. §1983, and the Illinois Whistleblowers Act ("IWA"), 740 ILCS 174, *et*

*seq.*, as well as a common law claim for intentional infliction of emotional distress.[1]

Defendants now move to dismiss the SAC, (Dckt. #55), for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendants'

motion is granted in part, and denied in part.

---

[1] Plaintiff withdrew her claims for retaliatory discharge and violation of the Illinois Personnel Record Review Act ("IPRRA"), 820 ILCS 40, *et seq.* (*See* Dckt. #65 at 12, 14). Defendants moved to dismiss plaintiff's IPRRA claim pursuant to Rule 12(b)(1). Because plaintiff voluntarily withdrew her IPRRA claim, that claim is now off the table.

## I.  LEGAL STANDARD FOR CONSIDERATION OF A MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and the complaint must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009).  When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).  In the employment discrimination context, "a plaintiff must advance plausible allegations that she experienced discrimination because of her protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022).

When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  Courts are also permitted to consider "any facts set forth in the complaint that undermine the plaintiff's claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (cleaned up).

## II.     BACKGROUND

### A.     Facts alleged in the SAC.

#### i.     Plaintiff's employment with the CCSO and her foot injury.

The CCSO, which is responsible for operating the Cook County jail, employs plaintiff as a Corrections Officer at the jail.  (Dckt. #55 ¶¶3–4).  While plaintiff was at work on July 4, 2016, CCSO Lieutenant James Holmes slammed a steel lobby door on plaintiff's foot.  (*Id.* ¶13).  Plaintiff took work leave for approximately five weeks, (*id.* ¶14), then returned to work in September 2016, (*id.* ¶17).  After she returned, plaintiff began to experience pain in her injured foot and noticed that her feet would swell.  (*Id.*).  Plaintiff communicated to her supervisors that it was difficult to wear shoes after standing on her feet for more than eight hours, and she refused to work the sixteen-hour overtime shifts that were mandatory for certain CCSO employees at the time.  (*Id.* ¶¶16, 19, 20).  After plaintiff refused to work these shifts, CCSO repeatedly denied her requests for an accommodation.  (*Id.* ¶20).

After plaintiff returned to work, she was reassigned to a different housing unit that she alleges was more physically demanding.  (*Id.* ¶21).  She was also assigned to Protective Custody, which required her to work with "high-risk movement individuals, with little or no backup." (*Id.*).  Plaintiff sought other opportunities within the CCSO and Cook County, including a position as an Environmental Health Coordinator, but her pursuits were unsuccessful, which she attributes, at least in part, to her age (sixty-one years old at the time).  (*Id.* ¶¶20, 26).  Plaintiff, a licensed barber, alleges that she could have been assigned other responsibilities, including working in the jail barbershop, (*id.* ¶¶23–24), but, unlike other officers with disabilities, she was not given the choice to work less physically demanding assignments, (*id.* ¶22).

3

### ii.    Plaintiff's second job.

In or around October 2020, plaintiff decided she wanted to work with Chicago Public Schools ("CPS") to assist children during the pandemic. (*Id.* ¶28). She applied to CPS, (*id.* ¶32), and ultimately accepted a six-month contract to work at a public elementary school, (*id.* ¶35). Because she was scheduled from 3:00 p.m. to 11:00 p.m. at the jail, plaintiff "was confident she could perform the daytime school job" from 7:00 a.m. to 3:00 p.m. (*Id.* ¶34).

The elementary school was located approximately ten minutes by car from Cook County jail. (*Id.* ¶36). Plaintiff asked her supervisors if she could take her lunch break at the beginning of her shift to allow her to travel between the school after 3:00 p.m. to the jail at 4:00 p.m. for the start of her shift. (*Id.* ¶38). Her request was granted. (*Id.* ¶39).

### iii.    Plaintiff's FMLA usage.

Plaintiff has utilized FMLA leave continuously since 2013 to take care of her elderly parents. (*Id.* ¶40). Although her father passed away in 2022, plaintiff still utilizes her FMLA leave to take care of her mother. (*Id.*). Between January 2021 and June 2021, plaintiff "chose to occasionally utilize her FMLA time to care for her parents" between 3:00 p.m. and 4:00 p.m. "on the days she was working for the CCSO." (*Id.* ¶43).

### iv.    Plaintiff reports the harassment of her co-workers.

In or around January 2021, plaintiff was speaking with her co-worker, who disclosed to plaintiff that she had been sexually harassed at work. (*Id.* ¶45). As a "peer support officer," plaintiff "felt it was her responsibility and duty to report the sexual harassment to her supervisors," (*id.* ¶46), so she wrote a letter to the CCSO's Human Resources leadership detailing the sexual harassment against her co-worker and another female officer, (*id.* ¶47).

### v. Events following plaintiff's report of sexual harassment.

After she reported her co-workers' sexual harassment, plaintiff's supervisors began to deny her request to take her lunch break at the start of her shift, including defendant Yoksoulian, who classified the request as a "schedule change." (*Id.* ¶48). Plaintiff thereafter filed a "90-day hardship" request to change her shift, (*id.* ¶49), which was denied, (*id.* ¶51). After reporting the sexual harassment, plaintiff was accused of abusing her FMLA leave. (*Id.* ¶52).

Then, on June 28, 2021, the CCSO filed a complaint against plaintiff with the Cook County Sheriff's Merit Board (the "Merit Board") seeking to terminate plaintiff's employment. (*Id.* ¶53). The Merit Board later amended its complaint on February 13, 2024. (*Id.* ¶54). In general, the Merit Board's complaint and amended complaint alleged that, while plaintiff was on intermittent FMLA leave, she worked a part-time job from January to June 2021 and failed to provide notice of the secondary job to the CCSO. (*Id.* ¶55).

### B. EEOC Charge and "Missing Person Project."

On August 25, 2021, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC Charge") alleging that she had been denied reasonable accommodations and had been "disciplined excessively" after disclosing her foot injury to the CCSO. (*Id.* ¶56). After plaintiff filed the EEOC Charge, she and the CCSO engaged in settlement negotiations. (*Id.* ¶103). During these negotiations, plaintiff expressed a desire to work with the CCSO's "Missing Person Project"; however, she was told by an unidentified person that she could not work for the project due to her age. (*Id.*).

### C. Post-EEOC Charge Employment Actions.

After she filed her EEOC Charge, plaintiff was suspended without pay four times. (*Id.* ¶59). She also applied for, and was denied, two positions: one with Division 9 "Super Max," (*id.* ¶58), and one with the CCSO Administrative Relief team, (*id.* ¶61).

### D. Procedural Background.

On July 8, 2022, the EEOC issued plaintiff a "Right to Sue" letter. (Dckt. #1 at 7–11; Dckt. #55 ¶57). Plaintiff filed her initial pro se complaint in this matter on October 7, 2022, (Dckt. #1), and her pro se Amended Complaint on January 11, 2023, (Dckt. #15), alleging violations of the ADA and ADEA.

While defendants' motion to dismiss the Amended Complaint, (Dckt. #20), was still pending, plaintiff filed a document titled "Counterclaim with Exhibits," (Dckt. #24). The Court construed plaintiff's "Counterclaim with Exhibits" as an amended complaint filed without leave of court and struck it, but in the same order, granted plaintiff the opportunity to file a motion for leave to file an amended complaint—provided she could show good cause existed for granting such leave. (Dckt. #25). Plaintiff thereafter filed a motion seeking leave to amend her complaint to, among other things, add an FMLA claim. (Dckt. #32). The Court denied her motion, reasoning that plaintiff failed to provide "good cause" to amend, and failed to attach an amended complaint that included the FMLA claim to her motion. (Dckt. #33). This Court then granted plaintiff yet another opportunity to file a motion for leave to amend, which again instructed her to explain why good cause existed to amend her complaint to add an FMLA claim. (*Id.*). On June 1, 2023, plaintiff filed a motion withdrawing her request to amend, and stating that she would proceed with her three original discrimination claims based on age, disability, and retaliation. (Dckt. #35).

The parties thereafter completed their briefing on defendants' motion to dismiss. (Dckt. #38). This Court then granted defendants' motion to dismiss the Amended Complaint without prejudice, and granted plaintiff leave to file a second amended complaint. (Dckt. #53).

Plaintiff subsequently retained counsel (Dckt. #54), then filed the SAC on July 18, 2025, alleging violations of the ADA, ADEA, FMLA, Section 1983, and IWA, as well as a common law claim for intentional infliction of emotional distress. (Dckt. #55). Defendants now move to dismiss the SAC. (Dckt. #61).

## III.  DISCUSSION

### A.  Defendants arguments regarding the proper parties.

Before reaching the merits of defendants' motion to dismiss, the Court addresses their arguments regarding which entities and individuals are proper defendants in this case.

### i.  CCSO is dismissed as a defendant, but plaintiff is given leave to amend to name Sheriff Dart as a defendant.

Defendants assert that the CCSO is a non-suable entity and should be dismissed as a party. (Dckt. #61 at 18). Courts in this Circuit are split on the question of whether a sheriff's office like the CCSO is amenable to being sued. *See Connelly v. Cook Cnty. Assessor's Off.*, 583 F.Supp.3d 1142, 1146 (N.D.Ill. 2022) (citing cases). Defendants argue the proper defendant should be the Cook County Sheriff, Thomas Dart, sued in his official capacity. Assuming defendants are correct, which the Court does for purposes of resolving the present motion, the Court will dismiss the CCSO as a defendant, but, in its discretion, grants plaintiff leave to amend her allegations to include Cook County Sheriff Thomas Dart as a defendant to this lawsuit. *Whitted v. Eve Cook Cnty. Sheriff's Off.*, No. 12 C 2461, 2013 WL 4840488, at *2 (N.D.Ill. Sept. 10, 2013). The court in *Whitted* took a similar approach where, like here, "the Court and the parties . . . relied upon . . . assertions and allegations against Sheriff Dart in his official capacity"

7

and "Sheriff Dart ha[d] been on notice of th[e] lawsuit." *Id.* Indeed, here, plaintiff named Sheriff Dart as a defendant in her prior amended complaint and he is thus on notice of the lawsuit. Accordingly, the CCSO is dismissed as a defendant in order for Dart to be named in its place.

### ii. Cook County may remain a defendant in its capacity as an indemnitor.

Defendants argue that substantive claims against Cook County must be dismissed and that it should remain a defendant only in its capacity as an indemnitor. Plaintiff does not substantively address this argument, and simply states that Cook County "may properly be joined as a Defendant, not based upon its participation in any conduct, but because Cook County will have to pay any damages owed by the CCSO." (Dckt. #65 at 14). The Court therefore finds that Cook County must be joined as a defendant, not based on its participation in any alleged conduct, but solely in its capacity as indemnitor of the CCSO. *See Connelly*, 583 F.Supp.3d at 1147 (deeming Cook County a necessary party in a suit against the Cook County Assessor's Office and ordering it joined in its capacity as indemnitor).

### iii. Plaintiff's ADA and IWA claims against Yoksoulian in her individual capacity are dismissed with prejudice.

Defendants argue that Yoksoulian should be dismissed because certain claims are improperly brought against her in her individual capacity. (Dckt. #61 at 18–20). For the reasons set forth below, the claims that remain are plaintiff's ADA and IWA claims. Plaintiff seemingly concedes that her claims against Yoksoulian in her individual capacity are improper for these counts, arguing only that she can maintain individual liability against Yoksoulian for her FMLA, Section 1983, conspiracy, and intentional infliction of emotion distress claims. (Dckt. #65 at 15). Accordingly, her claims against Yoksoulian in her individual capacity under the ADA and IWA are dismissed with prejudice. Defendants' arguments with respect to Yoksoulian's

individual liability on plaintiff's remaining claims are denied as moot at this time because those claims are dismissed for the reasons discussed further below.

   **B.    Plaintiff's FMLA, Missing Person Project ADEA, and Section 1983 claims are dismissed with prejudice.**

   Defendants argue that plaintiff's FMLA and Section 1983 claims must be dismissed because they are time-barred and plaintiff's ADEA claim, as it relates to the Missing Person Project, must be dismissed because plaintiff failed to exhaust her administrative remedies. However, statute of limitations and exhaustion are both affirmative defenses to plaintiff's claims. *See, e.g.*, *BNSF Ry. Co. v. Town of Cicero, Ill.*, 592 F.Supp.3d 716, 733 (N.D.Ill. 2022) (statute of limitations is an affirmative defense); *Moore v. Lear Corp.*, 664 F.Supp.3d 881, 885 (N.D.Ind. 2023) ("[F]ailure to exhaust is normally considered to be an affirmative defense.") (cleaned up). Accordingly, defendants' argument on these points "implicates the pleading principle that [t]he mere presence of a potential affirmative defense does not render the claim for relief invalid." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (cleaned up). "A plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Id*., *quoting Chi. Bldg. Design v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014). A "motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014) (cleaned up).

   With these principles in mind, the Court turns to defendants' arguments as to each affirmative defense at issue.

>        i.       **Plaintiff's FMLA claim is time-barred.**

FMLA interference and retaliation claims are subject to a two-year statute of limitations, which extends to three years if the employer acted willfully.  *Sampra v. U.S. Dep't of Transp.*, 888 F.3d 330, 332 (7th Cir. 2018) (citing 29 U.S.C. §2617(c)(2)).  Relevant here, "[t]he FMLA statute of limitations clock begins to run from the 'last event constituting the alleged violation.'" *Sampra*, 888 F.3d at 332, *quoting* 29 U.S.C. §2617(c)(1).

Plaintiff alleges that defendants discriminated against her and interfered with her FMLA use on June 28, 2021 by filing the Merit Board complaint for termination and accusing plaintiff of abusing her FMLA leave.  (Dckt. #55 ¶¶92–93).  Even assuming, without deciding, that the three-year limitation period for willful conduct applies (which is most favorable to plaintiff), plaintiff was required to file her FMLA claims no later than June 28, 2024.  Plaintiff argues that she met this deadline because she raised her FMLA claims in her EEOC Charge filed on August 25, 2021 and in prior *"complaints"* filed with this Court before June 28, 2024.  These arguments are without merit.

First, as an initial matter, because "a plaintiff is not required to file an EEOC charge to pursue an FMLA claim," plaintiff's EEOC charge could not toll the statute of limitations for her FMLA claim.  *Zavala v. Silverleaf Resorts, Inc.*, No. 3:16-CV-03186-M, 2018 WL 6252551, at *2 (N.D.Tex. Nov. 2, 2018).  In any event, plaintiff's EEOC Charge does not allege a violation of FMLA.  Rather, the EEOC Charge alleges that plaintiff was being discriminated against in violation of the ADA and ADEA.  (Dckt. #1 at 10).  Furthermore, none of the allegations in the EEOC Charge reference or relate to the facts underlying plaintiff's FMLA claim—i.e., her intermittent leave, the care of her parents, or her second job with the elementary school.  (*Id.*). Although plaintiff argues that she "first raised her [FMLA] claims in her [EEOC Charge]," she

does not cite to any specific allegations within the EEOC Charge that relate to her FMLA claims. Accordingly, the Court finds that plaintiff did not raise her FMLA claims in her EEOC Charge.

Nor did plaintiff raise her FMLA claims in a complaint properly before this Court. To support her arguments, plaintiff points to the "Counterclaim with Exhibits," (Dckt. #24), a "Statement" she filed on April 11, 2023, (Dckt. #30), and her "Renewed Motion" for leave to file an amended complaint, (Dckt. #32). First, neither the "Statement" nor the "Renewed Motion" are complaints. In fact, as this Court noted, plaintiff failed to attach an amended complaint which contained her FMLA claims to her Renewed Motion. (Dckt. #33). Second, although the Court construed plaintiff's "Counterclaim with Exhibits" as an amended complaint, that amended complaint was struck from the record because plaintiff filed it without leave of court. (Dckt. #25). Thus, plaintiff has not shown that she filed an operative complaint by June 28, 2024 which properly raised her FMLA claims. Rather, she first raised her FMLA claims in the SAC, which was filed on July 18, 2024, nearly a month after the outermost deadline. (Dckt. #55).

Plaintiff argues that even though her attempts to amend her complaint were "ultimately denied," her FMLA claims are still timely because defendants had "fair notice" of them through her other filings. (Dckt. #65 at 2). Not only does plaintiff fail to cite any authority for this proposition, but it is also contrary to the law. For fair notice to be given, "*a complaint* must at least 'include the operative facts upon which a plaintiff bases [her] claim.'" *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.1992), *quoting Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 198 (7th Cir. 1985)) (emphasis added).[2] Accordingly, the Court finds that

---

[2] Plaintiff seemingly concedes a party cannot receive "fair notice" of claims based solely on filings other than the operative complaint. In her response, plaintiff argues "Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts should 'freely give leave when justice so requires' for amendments *to complaints*. The purpose of Rule 15 is satisfied as long as *the initial complaint* provides fair notice of the claims." (Dckt. #65 at 2–3) (citing *Norton v. Intl. Harvester Co.*, 627 F.2d 18, 21 (7th Cir. 1980)) (emphasis added).

plaintiff's FMLA claims are barred by the statute of limitations, and therefore dismisses them with prejudice.[3]

> ### ii. Plaintiff's ADEA claim related to the Missing Person Project is time-barred.

"In order to bring an ADEA claim in federal court, a plaintiff must first have raised it in a timely EEOC charge." *See* 29 U.S.C. §626(d); *see also Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003). In complying with the charge-filing requirement, a plaintiff need not allege every single fact that might support her claims in the charge. *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000). Nonetheless, federal discrimination claims are actionable only if they are "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Defendants argue that plaintiff's Missing Person Project age discrimination claim is time-barred because it was not timely raised in her EEOC Charge and mentioned for the first time in the SAC. In response, plaintiff argues that her Missing Person Project age discrimination claim is timely because she raised general age discrimination claims in her EEOC Charge, and therefore did not need to specifically mention facts about the Missing Person Project.

In order to be "like or reasonably related," the complaint must at least involve the same conduct and the same individuals as set forth in the EEOC Charge. *Id.* at 501. Here, plaintiff's Missing Person Project age discrimination claims were not—and could not—be reasonably related to the conduct set forth in her EEOC Charge because the events giving rise to those

---

[3] Plaintiff argues that to deny her claims "based solely on procedural missteps while she was unrepresented would be unjust" and that courts should "freely give leave when justice so requires." (Dckt. #65 at 2). This Court has done just that by granting plaintiff three opportunities to amend her complaint. (Dckt. #25, 33, 53).

claims occurred *after* she filed her EEOC Charge on August 25, 2021.  (Dckt. #55 ¶56).  It was during settlement negotiations related to her EEOC Charge that plaintiff expressed interest in working with the Missing Person Project and was told by an unidentified person that she could not do so due to her age.  (*Id.* ¶103).  Her discrimination claims related to the Missing Person Project therefore could not have been included in her earlier-filed EEOC Charge.  Accordingly, the Court finds that plaintiff's ADEA claims related to the Missing Person Project were not properly exhausted, and therefore dismisses them with prejudice.[4]

### iii.    Plaintiff's Section 1983 claims are time-barred.

Plaintiff's Section 1983 claims allege that defendants conspired to (and did) retaliate against her for reporting her co-workers' sexual harassment in February 2021.  The applicable statute of limitations for constitutional tort claims under Section 1983 is two years in Illinois. *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 805 (7th Cir. 2008).  Defendants argue that the allegations that underlie plaintiff's Section 1983 claims were raised for the first time in the SAC and that those allegations do not relate back to her original complaint, and are therefore time-barred.  Plaintiff responds that her Section 1983 claims relate back, and are therefore timely, because she checked off a "Section 1983" box on her January 11, 2023 Amended Complaint.  (Dckt. #65 at 4).  But as this Court pointed out in its prior order, "the fact that plaintiff has checked the box to indicate that her complaint is under Section 1983 is insufficient, without more, to state a claim for the violation of that provision."  (Dckt. #53 at 4 n.3 (citing *Chavez v. Wal-Mart Stores, Inc.*, CV 13-6429-GHK (PJWx), 2014 WL 12591244, at *4 (C.D.Cal. Mar. 3, 2014))).

---

[4] Plaintiff cites to *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 906 (7th Cir. 1981), but nothing in *Eggleston* supports the conclusion that a plaintiff properly exhausts ADEA claims based on events that occur *after* the filing of plaintiff's EEOC Charge.

Plaintiff also generally argues that "a complaint need not plead legal theories, which can be learned during discovery." (Dckt. #65 at 4, *quoting Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)). While this proposition is true, it does not bear on the relation-back analysis. Under Rule 15, "an amendment will relate back to the original complaint if the amendment alleges events close in time and subject matter to those previously alleged, and if they led to the same injury." *In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 331 (7th Cir. 2009) (cleaned up). "The essential inquiry is whether the original pleading furnishes the defendant with notice of the events that underlie the new contention." *Id.* (cleaned up).

Here, the Amended Complaint contains no allegations related to the alleged sexual harassment of plaintiff's co-worker, plaintiff's report to the CCSO about the alleged sexual harassment, or the alleged retaliation plaintiff faced as a result of reporting the sexual harassment. Accordingly, the Court finds that plaintiff's Section 1983 claims were first raised in her SAC, which was filed in July 2024, long after the two-year statute of limitations had run. Accordingly, plaintiff's Section 1983 claims are barred by the statute of limitations, and the Court therefore dismisses them with prejudice.

### C. Plaintiff has adequately alleged her ADA claim.

To prevail on an ADA discrimination claim, a plaintiff must show: (1) she is disabled within the meaning of the ADA; (2) her work performance met the employer's legitimate expectations; (3) she was discharged; and (4) the circumstances surrounding the discharge indicate it was more likely than not that her disability was the reason for the discharge. *Leffel v. Valley Financial Servs.*, 113 F.3d 787, 794 (7th Cir. 1997). Defendants argue that plaintiff has failed to adequately allege the first, second, and fourth elements of her ADA discrimination claim, such that the claim should be dismissed. The Court disagrees.

To begin, defendants embrace the sort of rigorous pleading standard that has been rejected by the Seventh Circuit. As the Court explained in *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*:

> [T]he Federal Rules of Civil Procedure do not require code pleading. Under the old-pre-Rules regime of code pleading, plaintiffs were required to plead the elements of a cause of action along with facts supporting each element. . . . Under the modern regime of the Federal Rules, the complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has substantive plausibility.

786 F.3d 510, 517 (7th Cir. 2015) (cleaned up); *Taylor v. Salvation Army National Corp.*, 110 F.4th 1017, 1027-28 (7th Cir. 2024) (citing *Runnion*). Plaintiff has met this standard.

### i. Plaintiff has alleged she is disabled within the meaning of the ADA.

Defendants first argue that plaintiff has failed to allege a disability within the meaning of the ADA. (Dckt. #61 at 8–9). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities" of an individual. 42 U.S.C. §12102(2)(A). For purposes of defining who is disabled, the ADA defines a "major life activity" as, among other things, "walking" and "standing." *Id.*

Defendants argue that plaintiff has pleaded only "that her foot was injured at work," and that "merely having a physical injury" is not enough to qualify as disabled under the ADA. (Dckt. #61 at 8–9). In support of their argument, defendants cite cases where courts have dismissed ADA claims because the plaintiffs failed to "even disclose [their] injury," *see Bucks v. Mr. Bults, Inc.*, 218 F.Supp.3d 776, 782 (S.D.Ill. 2016), "fail[ed] to explain the severity" of their alleged disability, *see Collins v. Chicago Transit Auth.*, No. 19-CV-5591, 2020 WL 5819871, at *3 (N.D.Ill.Sept. 30, 2020), or otherwise alleged that their injuries were temporary, thereby excluding them from the definition of disability under the ADA, *see Etheridge v. Hudson Grp. Retail, LLC*, No. 20-CV-7204, 2022 WL 375556, at *5 (N.D.Ill. Feb. 8, 2022).

15

None of these cases are applicable here. Plaintiff has alleged the nature of her injury (namely, her foot injury), the severity of her disability (namely, that it was difficult for her to wear shoes after standing and working for more than eight hours, and that she experiences swelling in her foot), and that her injuries were more than temporary, and have persisted since her foot was first injured. These allegations, in addition to plaintiff's allegations that her foot injury has impacted her major life activities, are sufficient at the pleading stage. *See, e.g.*, *Ellis v. Oak Lawn Hyundai, Inc.*, No. 24 CV 4642, 2025 WL 1940375, at *8 (N.D.Ill. July 15, 2025) (allegation that plaintiff had "difficulty seeing as a result of his disability," was sufficient to survive a motion to dismiss where ADA defined "seeing" as a "major life activity."); *Nache v. BNSF Ry. Co.*, No. 423CV04063SLDJEH, 2024 WL 945299, at *3 (C.D.Ill. Mar. 5, 2024) (allegation that the plaintiff had ulcerative colitis causing severe abdominal pain and dehydration, which affected major life activities like sleeping and eating, were sufficient to plausibly allege a disability under the ADA).

Defendants further argue that plaintiff's allegation that she was able to work an eight-hour shift as a teacher on the same days she worked an eight-hour shift as a Corrections Officer contradict her allegations that she is disabled, requiring dismissal of her claim. But to reach this conclusion, the Court would be required to guess at the essential functions of plaintiff's teaching job, whether those functions caused plaintiff foot pain, and whether plaintiff needed or received a reasonable accommodation at her teaching job—and in doing so, view plaintiff's allegations in a light most favorable to defendants. The Court does not—and indeed, cannot—do so. *Yeftich*, 722 F.3d at 915 (When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor.").

Accordingly, the Court finds plaintiff has adequately alleged a disability within the meaning of the ADA.

### ii. Plaintiff has sufficiently alleged that she is qualified to perform the essential functions of her job.

Next, defendants argue that plaintiff has failed to plausibly allege that she is qualified to perform the essential functions of her job with or without a reasonable accommodation based on her allegation that she refused to perform the sixteen-hour mandatory overtime shifts. But defendants cite no authority which demonstrates that plaintiff's allegation that she *refused* to work the mandatory sixteen-hour shifts equates to an *inability* to do so either with or without a reasonable accommodation. Defendants also ignore the other allegations in the SAC, including, *inter alia*, plaintiff's allegations that at the time of her injury, she had worked for defendants for four and a half years (and approximately thirteen years at the time the SAC was filed), demonstrating she had the education, skill, and experience to perform the job. (Dckt. #55 ¶12 (alleging plaintiff began working for the CCSO in December 2011)). Plaintiff also alleges that she was qualified to perform the essential functions with a reasonable accommodation. (*Id.* ¶79). These allegations are sufficient at the pleadings stage. S*ee, e.g.*, *Torzewski v. COSCO Shipping Lines N. Am. Inc.*, 414 F.Supp.3d 1143, 1149 (N.D.Ill. 2019) (allegations that the plaintiff "possessed the education, skill, experience, and all other requirements necessary for the position as Director of Sales and that he was able to perform the essential functions of his position, with or without a reasonable accommodation" were sufficient to survive a motion to dismiss) (cleaned up).

Defendants further argue that plaintiff has not sufficiently pleaded her ADA claim because she requested to be assigned to a different position, and the "ADA does not require an employer to transfer its employee from another job as a form of a reasonable accommodation."

(Dckt. #61 at 10). This argument is premature, as evidenced by the fact that defendants only cite cases at the summary judgment stage in support of their argument. *See Schmidt v. Methodist Hosp.*, 89 F.3d 342, 344 (7th Cir. 1996) and *Brooks v. City of Pekin*, 95 F.4th 533, 538 (7th Cir. 2024). Moreover, the Seventh Circuit is clear that "the ADA may require an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of [her] current position." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996). Although there are limits to this requirement, the Court need not address them at this juncture. For now, it is sufficient that plaintiff has alleged that she was qualified to perform the essential functions of her job, with or without a reasonable accommodation.

### iii. Plaintiff has alleged a connection between her disability and her adverse employment action.

Finally, defendants argue, without citing any authority, that plaintiff failed to allege a connection between her alleged disability and any adverse employment action such that her ADA claim must be dismissed. The Court disagrees. Plaintiff alleges that after she sought accommodation requests, defendants engaged in retaliatory measures, including reassigning plaintiff to more physically demanding positions and suspending her. At this stage, these allegations are sufficient. *See Khan v. Cook Cnty.*, No. 96 C 1113, 1996 WL 432410, at *3 (N.D.Ill. July 30, 1996) (allegation that "that the transfers were in retaliation for his requests for accommodation" was sufficient to establish a causal link).[5]

---

[5] Plaintiff also argues that "[c]ircumstantial evidence, like timing and disparate treatment, may establish causation, particularly when protected conduct and adverse actions align closely in time." (Dckt. #65 at 10 (citing *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). In their reply, defendants argue that "temporal proximity alone is insufficient to establish causation." (Dckt. #68 at 4 (citing *Carter v. Chicago State Univ.*, 778 F.3d 651 (7th Cir. 2015))). Both parties rely on cases that were decided on summary judgment and this Court will not apply their holdings at the pleadings stage.

**D.      Plaintiff has failed to allege her remaining ADEA claims.**

The ADEA makes it illegal for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1).  To state a claim for retaliation under the ADEA, plaintiff must allege that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between her protected activity and the adverse action.  *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017).  It bears emphasizing that at this stage, the bar is low: a plaintiff need only plead "the type of discrimination, when it occurred, and by whom." *Stumm v. Wilkie*, 796 Fed.Appx. 292, 295 (7th Cir. 2019).  Nonetheless, defendants argue that plaintiff failed to allege the elements of her ADEA claim beyond a conclusory level and the Court agrees.

Here, plaintiff alleges that Cook County never followed up with her after her interview for an Environmental Health Coordinator position, and that she "believed this was due to her age." (Dckt. #55 ¶26).  This conclusory allegation, without more, does not meet even the low bar to state a claim of discrimination based on age.  Plaintiff fails to allege any other facts that give rise to a plausible inference that defendants discriminated against her based on her age.  *See, e.g.*, *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777–78 (7th Cir. 2022) (directing plaintiff to "explain, in a few sentences, how she was aggrieved and what facts or circumstances lead her to believe her treatment was because of her membership in a protected class."); *Anderson v. Illinois Dep't of Emp. Sec.*, No. 23-CV-04097, 2024 WL 4132748, at *2–3 (N.D.Ill. Sept. 10, 2024) (dismissing ADEA claim where the plaintiff failed to connect the adverse employment action to, *inter alia*, her age); *Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207*, No. 13 C 1706, 2013 WL 6730885, at *7–8 (N.D.Ill. Dec. 20, 2013) (finding plaintiff failed to state a claim for

age discrimination where she failed to allege that any decision maker made any comments about her age around the time of the alleged adverse employment actions). Accordingly, plaintiff has failed to adequately allege her remaining ADEA claims, and the Court therefore dismisses them.

### E.    Plaintiff's IWA claim is not time-barred, and is adequately pleaded.

#### i.    Plaintiff's IWA claim is not time-barred.

A one-year statute of limitations applies to IWA claims. *Gray v. Vill. of Hazel Crest*, No. 21-CV-6372, 2022 WL 2181428, at *4 (N.D.Ill. June 16, 2022). "[I]t has been squarely held in Illinois that as a retaliatory discharge claim is a tort, the one-year statute of limitations period provided in the Tort Immunity Act thus applies thereto." *Padilla v. County of Cook*, 100 F.Supp.2d 1145, 1147 (N.D.Ill. 2000). Defendants argue that plaintiff's IWA claims must be dismissed because they are based on retaliation that occurred on June 18, 2022 (when the Merit Board complaint was filed), yet plaintiff first raised them in her SAC, which was filed more than one year later, on July 18, 2024. Plaintiff argues that her IWA claim is not subject to the one-year statute of limitations because she seeks injunctive relief, including "reinstatement of her police powers (deputization)." (Dckt. #55 ¶20). Plaintiff is correct that "[n]othing in [the Tort Immunity Act] affects the right to obtain relief other than damages against a local public entity or public employee." 745 ILCS 10/2-101. And here, plaintiff seeks reinstatement of her police powers which is "a form of equitable relief." *Gray*, 2022 WL 2181428, at *5. Accordingly, her claim is not time-barred though her remedies may be limited.

#### ii.    Plaintiff has adequately alleged her IWA claim.

Defendants argue that plaintiff's IWA must still be dismissed for failure to state a claim. The IWA requires plaintiff to plead that her employer's retaliation was "*because* of the employee disclosing . . . public corruption or wrongdoing." 740 ILCS 174/20.1. Defendants argue that

plaintiff failed to plead that her adverse employment action was because she complained about her co-worker's sexual harassment complaint. However, the Court's review of the SAC reveals that plaintiff's allegations are sufficient. First, plaintiff alleges that after she reported the sexual harassment of her co-worker, she experienced several instances of retaliation, including denying her request for a "90-day hardship," accusing her of abusing her FMLA leave, filing the Merit Board complaint against her, and suspending her on multiple occasions. (Dckt. #55 ¶¶51–59). These allegations sufficiently identify adverse actions taken against her based on her report of sexual harassment.

Defendants argue further that plaintiff cannot plead causation because she does not allege that Yoksoulian even knew about the sexual harassment report. Although plaintiff also failed to respond to this argument, it also lacks merit at this early stage. In *Logan v. City of Chicago*, for example, defendants similarly argued that the plaintiff could not satisfy the causation element of his IWA claim. No. 17 C 8312, 2018 WL 5279304, at *6 (N.D.Ill. Oct. 24, 2018). In rejecting this argument, the court stated:

> Logan is not required to prove causation at this point, but to allege it plausibly. If Logan is unable to show that Defendants had knowledge of his internal complaints, then perhaps he will lose on summary judgment. But the Court is not entitled to assume that other evidence of causation is lacking simply because it is not detailed in [plaintiff]'s complaint.

*Id.* (cleaned up). Similarly here, plaintiff has sufficiently alleged a causal connection between her protected conduct and defendants' adverse actions.

Finally, defendants argue that plaintiff's IWA must be dismissed because she has not alleged that she was discharged. (Dckt. #61 at 16). But, the IWA states that:

> [a]ny other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliatory action by an employer under this Act if the act or omission would be materially adverse to a reasonable

employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing.

740 ILCS 174/20.1.  As set forth above, at the pleading stage, plaintiff has sufficiently pleaded adverse employment actions.  Accordingly, her IWA claim successfully withstands dismissal.

**F.      Plaintiff has failed to state a claim for intentional infliction of emotional distress.**

To state a claim for intentional infliction of emotional distress under Illinois law, "a plaintiff must allege facts establishing: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by plaintiff was severe; and (3) that defendant's conduct was such that defendant knew that severe emotional distress would be certain or substantially certain to result."  *Davis v. Pete's Fresh Mkt. 4700 Corp.*, No. 23-CV-14160, 2025 WL 672923, at *8 (N.D.Ill. Mar. 3, 2025), *quoting Heying v. Simonaitis*, 466 N.E.2d 1137, 1143 (Ill.App.Ct. 1984).  Illinois sets a "high bar" for intentional infliction of emotional distress claims.  *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017).  To qualify as outrageous, the conduct "must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society."  *Id.* (cleaned up).  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not suffice.  *Id.*

Liability for emotional distress "is even more constrained in the employment context."  *Id.* at 567.  The "everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations" do not give rise to emotional distress claims, otherwise "nearly every employee would have a cause of action."  *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (cleaned up).  To obtain relief in the employment context, an employee must show that an employer "clearly abuses the power it holds over an employee in a manner far

more severe than the typical disagreements or job-related stress caused by the average work environment." *Id.*

Here, plaintiff argues she was subject to the stripping of her police powers, reassignment to menial roles, repeatedly denied a reasonable accommodation, targeted with suspensions, and subject to the Merit Board complaint. These allegations do not rise to the high level necessary to allege a claim for intentional infliction of emotional distress in Illinois. *Compare Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill.App.Ct. 1999) (dismissing intentional infliction of emotional distress where plaintiff alleged she was demoted, transferred, forced to perform demeaning and humiliating tasks, harassed, intimidated, and threatened with termination in retaliation for voicing safety concerns); *and Gonzalez v. City of Chicago*, No. 16-CV-08012, 2018 WL 1561735, at *8 (N.D.Ill. Mar. 30, 2018) (allegations of "a campaign of harassment that included falsely accusing [the plaintiff] of setting off mace in a restaurant, unjustly suspending him, and retaliatory conduct by Officers DeVito and Zayas" insufficient to allege extreme and outrageous conduct); *with Milton v. Ill. Bell Tel. Co.*, 427 N.E.2d 829, 831 (Ill.App.Ct. 1981) (holding that coercing employee to illegally falsify work reports and retaliating against him when he refused to do so was extreme and outrageous). Accordingly, plaintiff's intentional infliction of emotional distress claim is dismissed.

### G. Defendants' request to strike plaintiff's prayer for punitive damages is denied with respect to her ADA claim.

In her ADA claim, plaintiff asks the Court to award punitive damages. Defendants generally move to strike plaintiff's prayer for punitive damages, but fail to raise any specific arguments or cite any authority in support of striking plaintiff's prayer for punitive damages in

Case: 1:22-cv-05552 Document #: 71 Filed: 09/30/25 Page 24 of 24 PageID #:553


her ADA claim.[6]  (Dckt. #61 at 21 (addressing Section 1983 and ADEA claims)).  Accordingly, defendants' request to strike plaintiff's prayer for punitive damages is denied with respect to plaintiff's remaining ADA claim.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss plaintiff's SAC, (Dckt. #61), is granted in part, and denied in part.  Defendants' motion to dismiss plaintiff's ADA and IWA claims is denied.  Plaintiff's FMLA, Section 1983, and ADEA Missing Person Project claims are dismissed with prejudice.  Plaintiff's ADA and IWA claims against Yoksoulian in her individual capacity are dismissed with prejudice.  Plaintiff's remaining ADEA claims and her intentional infliction of emotion distress claim are dismissed without prejudice.  Plaintiff is granted until October 21, 2025 to file an amended complaint which names Sheriff Dart as a defendant. Plaintiff's amended complaint must be consistent with this Memorandum Opinion and Order and the dictates of Federal Rule of Civil Procedure 11.  Defendants shall answer by November 4, 2025.

**DATE: September 30, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**

---

[6] Plaintiff seeks punitive damages in each count except for her IWA count.  Defendants move to strike plaintiff's prayer for punitive relief in the other claims as well.  Because the court finds those claims should otherwise be dismissed, it denies defendants' argument as moot.